Piecraft Wantagh, LLC v Willow Wood Assoc., L.P. (2023 NY Slip Op 02688)

Piecraft Wantagh, LLC v Willow Wood Assoc., L.P.

2023 NY Slip Op 02688

Decided on May 17, 2023

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on May 17, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ANGELA G. IANNACCI, J.P.
CHERYL E. CHAMBERS
JOSEPH A. ZAYAS
WILLIAM G. FORD, JJ.

2021-03182
 (Index No. 603816/18)

[*1]Piecraft Wantagh, LLC, plaintiff-appellant, 
v
Willow Wood Associates, L.P., defendant/counterclaim plaintiff-respondent; Thomas Corning, et al., counterclaim defendants-appellants, et al., counterclaim defendant.

McLaughlin & Stern, LLP, Garden City, NY (Christian Browne and Scott Mollen of counsel), for plaintiff-appellant and counterclaim defendants-appellants.
Law Offices of Steven Cohn, P.C., Carle Place, NY (Susan E. Dantzig and Gary Weintraub of counsel), for defendant/counterclaim plaintiff-respondent.

DECISION & ORDER
In an action, inter alia, to recover damages for breach of a lease, which was consolidated with a summary proceeding, inter alia, to recover unpaid rent, the plaintiff and the counterclaim defendants Thomas Corning and Shawn Zimberg appeal from a judgment of the Supreme Court, Nassau County (R. Bruce Cozzens, Jr., J.), entered April 26, 2021. The judgment, upon an order of the same court (Jack L. Libert, J.) dated May 11, 2020, inter alia, granting the defendant/counterclaim plaintiff's motion for summary judgment dismissing the complaint and on the issue of liability on its counterclaims against the plaintiff and the counterclaim defendants Thomas Corning and Shawn Zimberg to recover unpaid rent, and, in effect, denying those branches of the cross-motion of the plaintiff and the counterclaim defendants Thomas Corning and Shawn Zimberg which were for summary judgment on the first, second, and fifth causes of action and pursuant to CPLR 3025(c) to conform the complaint to the evidence, and upon a decision of the same court (R. Bruce Cozzens, Jr., J.) dated March 22, 2021, made after a nonjury trial on the issue of damages, is in favor of the defendant/counterclaim plaintiff and against the plaintiff and the counterclaim defendants Thomas Corning and Shawn Zimberg in the principal sum of $2,160,401 and, in effect, dismissing the complaint.
ORDERED that the judgment is reversed, on the law, with costs, the defendant/counterclaim plaintiff's motion for summary judgment dismissing the complaint and on the issue of liability on its counterclaims against the plaintiff and the counterclaim defendants Thomas Corning and Shawn Zimberg to recover unpaid rent is denied, the complaint is reinstated, and the order dated May 11, 2020, is modified accordingly.
In November 2015, pursuant to a written lease, the plaintiff, Piecraft Wantagh, LLC (hereinafter Piecraft), leased from the defendant, Willow Wood Associates, L.P. (hereinafter Willow Wood), a commercial unit in a shopping center in Wantagh. The lease was guaranteed by Thomas Corning, Christopher Dolan, and Shawn Zimberg (hereinafter collectively the guarantors). After performing a build-out of the interior of the premises, Piecraft opened a pizza restaurant in [*2]November 2016. On January 7, 2018, a flood occurred in the restaurant. Piecraft closed the restaurant and restored the premises over the course of approximately six weeks, but the restaurant never re-opened because Piecraft had no cash flow.
Meanwhile, on January 24, 2018, Willow Wood commenced a summary proceeding against Piecraft and the guarantors, inter alia, to recover unpaid rent. In March 2018, Piecraft commenced this action against Willow Wood, among other things, to recover damages for breach of the lease (first cause of action) and breach of the quiet enjoyment of the premises (second cause of action), and for a judgment declaring that Piecraft had no further obligations under the lease (fifth cause of action). Willow Wood asserted counterclaims in the action against the guarantors to recover unpaid rent, and the action and the summary proceeding were consolidated. On December 17, 2018, Piecraft surrendered the premises to Willow Wood, without prejudice to Willow Wood's claims to recover unpaid rent.
After the completion of discovery, Willow Wood moved for summary judgment dismissing the complaint and on the issue of liability on its counterclaims against Piecraft, Corning, and Zimberg to recover unpaid rent. Piecraft, Corning, and Zimberg cross-moved, inter alia, for summary judgment on the first, second, and fifth causes of action and pursuant to CPLR 3025(c) to conform the complaint to the evidence. In an order dated May 11, 2020, the Supreme Court granted Willow Wood's motion and, in effect, denied the cross-motion of Piecraft, Corning, and Zimberg. After a nonjury trial on the issue of damages, a judgment was entered in favor of Willow Wood and against Piecraft, Corning, and Zimberg in the principal sum of $2,160,401 on the counterclaims and, in effect, dismissing the complaint. Piecraft, Corning, and Zimberg (hereinafter collectively the appellants) appeal.
The Supreme Court properly rejected Piecraft's argument that its obligation to pay rent under the lease was excused under Real Property Law § 227. "At common law, a lessee was obligated by his [or her] express covenant to pay rent, even though the premises were actually destroyed" (Milltown Park v American Felt & Filter Co., 180 AD2d 235, 237; see Vann v Rouse, 94 NY 401, 405). Pursuant to Real Property Law § 227, however, "a tenant is permitted to quit the premises without any further liability for rent if the premises have become 'untenantable, and unfit for occupancy' through no fault or neglect of the tenant" (Milltown Park v American Felt & Filter Co., 180 AD2d at 237, quoting Real Property Law § 227). Here, Piecraft did not surrender the premises after the flood, but instead, restored the premises and remained in possession.
Piecraft further argued that it was relieved of its obligation to perform under the lease because Willow Wood breached Article 41 of the lease as well as its obligation to maintain a certain water utility pipe. On appeal, Willow Wood argues only that the evidence established, as a matter of law, that it did not breach the lease in the manner alleged. We disagree.
"It is well settled that a contract is to be construed in accordance with the parties' intent, which is generally discerned from the four corners of the document itself" (MHR Capital Partners LP v Presstek, Inc., 12 NY3d 640, 645). "Consequently, 'a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms'" (id. at 645, quoting Greenfield v Philles Records, 98 NY2d 562, 569).
Contrary to the Supreme Court's conclusion, Article 27 of the lease, which placed the obligation to maintain the interior of the premises, including by making ordinary repairs, on Piecraft, did not foreclose application of Article 41 to the present dispute. While Article 27 covered maintenance and upkeep, Article 41 set forth the parties' obligations in the distinct event of destruction or damage to the premises by casualty, such as a flood (see May v Gillis, 169 NY 330, 333). However, contrary to Piecraft's contentions, triable issues of fact existed as to the parties' obligations under Article 41 of the lease. Among other things, while Article 41 placed responsibility on Willow Wood to make certain repairs, it also provided that Piecraft was responsible for restoring any of its improvements, at its own cost and expense. Since the evidence did not eliminate triable issues of fact as to whether the restoration work required at the premises after the flood was limited to Piecraft's improvements, the parties' obligations under this article of the lease cannot be [*3]determined as a matter of law.
Triable issues of fact also existed, contrary to Willow Wood's contention, regarding whether a water utility pipe, which ran through multiple units in the shopping center, ending at an outdoor spigot utilized by Willow Wood, was Willow Wood's responsibility to maintain. Indeed, Paragraph 16 of Exhibit B to the lease provided that Piecraft would permit Willow Wood to "install and maintain" water lines required to service the shopping center. Further, the deposition testimony of a witness raised triable issues of fact as to whether the water utility line burst, and, if so, whether that event caused or contributed to the flooding in the premises. "The function of the court on a motion for summary judgment is not to resolve issues of fact or determine matters of credibility, but merely to determine whether such issues exist" (Charles v American Dream Coaches, 210 AD3d 948, 949 [internal quotation marks omitted]).
Accordingly, based upon the parties' arguments, we reverse the judgment and deny Willow Wood's motion for summary judgment dismissing the complaint and on the issue of liability on its counterclaims against the appellants. However, that branch of the appellants' cross-motion which was for summary judgment on the first, second, and fifth causes of action was properly denied in light of the existence of the aforementioned triable issues of fact. That branch of the appellants' cross-motion which was pursuant to CPLR 3025(c) to conform the complaint to the evidence was also properly denied, as such relief was unnecessary. The allegations in the pleadings, generally, that Willow Wood's failure to maintain the water utility pipe caused the flood are sufficient to cover the theory pursued by the appellants on the motion and the cross-motion.
The parties' remaining contentions either are improperly raised for the first time on appeal or need not be reached in light of our determination.
IANNACCI, J.P., CHAMBERS, ZAYAS and FORD, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court